UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JODI GILLESPIE,

               Plaintiff,                             Case No.  1:16-CV-226

v.

                                               HON. ROBERT HOLMES BELL

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant,
_____/

## OPINION

      This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Jodi Gillespie seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### STANDARD OF REVIEW

      The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was forty-six years of age on the date of the ALJ's decision.  (PageID.86, 258.)  She completed high school, and was previously employed as a waitress and table worker. (PageID.61, 1441.) Plaintiff filed for benefits on August 5, 2013, alleging that she had been disabled since April 1, 2012, due to asthma, allergies, high blood pressure, type II diabetes, joint / back pain, depression, an anxiety disorder, ADHD, acid reflux, chronic sinusitis, morbid obesity, colon polyps, and a metabolic syndrome.  (PageID.42, 63, 187–199.)  Plaintiff's applications were denied on March 4, 2014, after which time she sought a hearing before an ALJ.  (PageID.116–126.)  On

2

November 7, 2014, Plaintiff appeared with her counsel before ALJ Stanley Chin at which time both Plaintiff and a vocational expert (VE) testified. (PageID.1403–1447.)  On February 11, 2015, the ALJ issued his written decision, concluding that Plaintiff was not disabled.  (PageID.86–108.)  On January 8, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter.  (PageID.33–37.)  Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).   At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at step five.   At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 1, 2012.  (PageID.91.)  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) obesity; (2) type II diabetes mellitus (DM); (3) degenerative disc disease (with back pain); (4) thyroid nodules; (5) asthma (with chronic sinusitis); (6) gastroesophageal reflux disease (GERD); (7) obstructive sleep apnea; (8) depression; (9) anxiety; and (10) attention deficit hyperactivity disorder (ADHD).  (PageID.91.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (PageID.93–96.)  At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant cannot climb ladders, ropes or scaffolds.  The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  She must occasionally avoid exposure to extreme cold, heat and humidity.   She must also occasionally avoid exposure to environmental irritants such as fumes, odors, dusts, gases and poorly ventilated areas.    She must occasionally avoid the use of moving machinery and exposure to unprotected heights.   The claimant's work would be limited to simple, routine and repetitive tasks, performed in a work environment free of fast-paced production requirements involving only simple work related decisions and routine work place changes.

(PageID.96.)  Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work.  (PageID.106.)  At the fifth step, the ALJ questioned the VE

to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as an office helper (100,000 national jobs), assembler (59,000 national jobs), and garment sorter (48,000 national jobs). (PageID.1442–1443.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.107.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from April 1, 2012, through February 11, 2015, the date of decision. (PageID.107–108.)

## DISCUSSION

### 1.    Plaintiff Has Not Satisfied Her Step Three Burden.

Plaintiff argues the ALJ erred at step three by failing to find that her mental impairments met or equaled the requirements of Listings 12.04 and 12.06. Specifically, she contends that a mental RFC form completed by Dr. Ravinderjit Singh, M.D., constitutes evidence that her impairments are of listing level severity. The Court disagrees.

The "Listing of Impairments" is set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 1. It "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525, 416.925. The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* At issue in this case are

5

Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders).

A claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that [her] condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that [her] condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *see, e.g.*, *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that [s]he meets or equals a listed impairment, [s]he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Listings for mental impairments generally begin with "paragraph A" criteria which is "a set of medical findings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Paragraph A is followed by paragraph B, which contains a "set of impairment-related functional limitations." *Id.* Listings 12.04 and 12.06 also contain paragraph C criteria, which are additional functional criteria. *Id.* "The requirements in paragraphs B and C describe impairment-related functional limitations that are

6

incompatible with the ability to do any gainful activity." *Id.* Listing 12.04 is met "when the requirements in both [paragraphs] A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Similarly, Listing 12.06 is met "when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. Plaintiff contests the ALJ's paragraph B finding, claiming that it is unsupported by substantial evidence. (PageID.1454.)

The paragraph B severity requirements of Listings 12.04 and 12.06 require at least two of the following: (1) a marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. A "marked" limitation is a degree of limitation that is more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *see also Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 993 (6th Cir. 2007). The ALJ found that Plaintiff did not meet the requirements of paragraph B because she had only mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace, and had experienced no episodes of decompensation, which had been of extended duration. (PageID.94–95.)

Dr. Singh found that Plaintiff had "marked" difficulties in the ability to make judgments on simple work-related decision and "marked" difficulties in responding to changes in a routine work setting. (PageID.722–723.) These findings, however, are not paragraph B findings. Indeed, Plaintiff only states that these findings "could" have met a listing. (PageID.1454.) She provides no authority nor argument demonstrating that these opinions satisfied at least two marked paragraph B findings. But even if the Court were to assume that this opinion constituted evidence

that Plaintiff met the severity requirements of paragraph B, Plaintiff failed to provide any meaningful argument at the hearing, before the Appeals Council, or in her appeal before this Court that she also meets the paragraph A requirements of listing 12.04 and 12.06 or the alternative paragraph C requirements. As noted above, it is Plaintiff's burden to show that she meets all the requirements of a listing. This she has not done, and accordingly Plaintiff cannot show error with regard to the ALJ's step three determination.

To the extent Plaintiff faults the ALJ for failing to discuss Dr. Singh's opinion at step three, she cannot succeed. Dr. Singh's opinion related to the RFC, not a listing. Accordingly it was only natural for the ALJ to consider such at step four. Plaintiff points to no authority demonstrating that the ALJ was required to discuss the opinion a second time.

### 2. Plaintiff Has Not Shown Error Regarding the Medical Opinions.

In a related claim, Plaintiff argues the ALJ should have accorded greater deference under the treating physician rule to the opinion of Dr. Singh. She also argues the ALJ erred by giving greater weight to the opinion of Dr. Tareen, a non-examining agency consultant. (PageID.1455–1460.) The Court finds no error here.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is

undisputed that Dr. Singh qualifies as a treating physician.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.*  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

In addition to the marked limitations described above, Dr. Singh also concluded that Plaintiff had moderate limitations in the areas of understanding, remembering, and carrying out short and simple instructions (as well as detailed instructions); interacting appropriately with the public, supervisors, and coworkers; and responding appropriately to work pressures in a usual work setting.

9

(PageID.722–723.)  The ALJ concluded that these opinions enjoyed little support in the record.  (PageID.105.)  This conclusion is supported by substantial evidence.  For example, on November 20, 2013, Dr. Singh found Plaintiff had "fair" recent and remote memory, as well as "fair" concentration.  (PageID.1078.)  The doctor noted that Plaintiff's "[t]hought process was mostly linear and goal directed.  She gets a little tangential at times but is easily redirectable."  (PageID.1078.)  At her next visit on March 12, 2014, Dr. Singh noted that her "[t]hought process was linear and goal directed . . . Memory and concentration seemed grossly intact.  Insight and judgment considered to be fair at present."  (PageID.1080.)  Mental status exams dated May 29, 2014 and July 31, 2014, document similar results.  (PageID.1084, 1087.)  As the ALJ noted, therefore, the medical record does not support the severity of Dr. Singh's opinion.  The ALJ also found the doctor's opinion to be inconsistent with Plaintiff's ability to concentrate in her activities of daily living.  (PageID.105.)  For example, on her function report, Plaintiff stated she was able to prepare meals and handle her finances including paying bills, counting change, handling a savings account, and using a checkbook or money orders.  (PageID.218–219.)  Accordingly, the Court finds the ALJ provided good reasons, supported by substantial evidence, for assigning less than controlling weight to Dr. Singh's opinion.

Plaintiff next argues that the ALJ erred in assigning greater weight to the opinion of Dr. Tareen, the agency consultant, because she had not examined Plaintiff.  On February 7, 2014, Dr. Tareen provided an opinion concerning Plaintiff's impairments. Among other things, the doctor concluded that Plaintiff did not meet the paragraph B requirements of the mental listings, noting that Plaintiff had only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.

(PageID.53.) She also found that Plaintiff was moderately limited in the ability to carry out detailed instructions, but was not significantly limited in the ability to carry out very short and simple instructions.  (PageID.57.)  She was also not significantly limited in maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; and making simple work-related decisions.  (PageID.57.)  Dr. Tareen also found Plaintiff was moderately limited in the ability to complete a normal workday and workweek without interruptions and in performing at a consistent pace without an unreasonable number and length of rest periods.  (PageID.57.)  The ALJ assigned great weight to all but the last portion of Dr. Tareen's opinion, noting that while that portion was not supported by the record, the rest of the opinion was consistent with the overall record evidence.  (PageID.103–104.)

The ALJ is responsible for weighing conflicting evidence.  *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). The ALJ was free to consider Dr. Tareen's opinion and determine what weight, if any, it should be given. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d

789, 794 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). It is true that an examining relationship is a relevant consideration in evaluating opinion evidence. *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). However, the supportability and consistency of the opinion with the record as a whole are also relevant considerations. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). The ALJ found that the majority of Dr. Tareen's opinion was supported by the record while Dr. Singh's opinion was not. Plaintiff has not demonstrated otherwise. The ALJ did not err, therefore, in assigning greater weight to Dr. Tareen's opinion than to Dr. Singh's.

### 3. The ALJ's RFC Determination is Supported by Substantial Evidence.

Plaintiff next raises three arguments regarding the ALJ's RFC finding. First, she argues the ALJ erred when considering the opinion of Dr. Donald Sheill, M.D., a consultative examiner. (PageID.1462.) Next, she argues the ALJ erred by accepting and rejecting portions of Dr. Sheill's opinion as well as Dr. Tareen's rather than considering them as a whole. (PageID.1462.) Finally, she argues the limitations provided by the ALJ in the RFC are without medical support. (PageID.1463–1464.) The Court disagrees.

#### A.  *Dr. Sheill.*

On February 26, 2014, Dr. Sheill examined Plaintiff and completed a report documenting the results of his examination and summarizing his opinion as to Plaintiff's limitations. Regarding Plaintiff's physical abilities, he noted that Plaintiff was able to sit, stand, bend, stoop, carry, push, pull, and perform activities like button clothes, tie shoes, dress and undress, dial a

phone, open a door, make a fist, pick up a pencil, and climb stairs. (PageID.712.) Her gait was stable and within normal limits. (PageID.713.) The doctor concluded that "from an objective standpoint [Plaintiff] appeared fit for light manual labor." (PageID.711.) But when "factoring in the various health problems" the doctor concluded that Plaintiff "would have difficulty consistently working a fulltime job." (PageID.711.) The ALJ gave little weight to the opinion, noting that it was inconsistent with the overall record. He stated that the opinion "appears to be [based] on the claimant's subjective reporting because his objective examination was relatively benign besides the claimant having a limited range of motion in her lumbar spine." (PageID.102–103.) Plaintiff appears to argue this conclusion was in error, as the doctor stated he had factored in her diagnoses including asthma, diabetes, hypertension, allergies, reflux, back pain, obesity, and sleep apnea. (Page.711, 1462.)

Because Dr. Sheill was not a treating physician, the ALJ was not "under any special obligation to defer to [his] opinion or to explain why he elected not to defer to it." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539–40 (6th Cir. 2014). The opinions of a consultative examiner are not entitled to any particular weight. *See id.* at 539; *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *see Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source, *see Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

13

The ALJ did not err in finding that Dr. Sheill's examination did not support his conclusion.  As the ALJ noted, Dr. Sheill's physical examination was largely unremarkable.  For example, Plaintiff's lungs were clear throughout with good breath sounds and no rales, rhonchi, or wheezing.  (PageID.710.)  Both her fine and gross dexterity were intact. (PageID.710.)  Noting that nothing from the examination supported Dr. Sheill's opinion, the ALJ logically concluded that the doctor adopted Plaintiff's subjective allegations.  Plaintiff argues, however, that the doctor based his opinion on her impairments, noting that he also provided several diagnoses.  The Court disagrees.  "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Comm'r of Soc. Sec.*, 2000 WL 687680 at *5 (6th Cir. 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988)).  The ALJ did not err, therefore, in finding Dr. Sheill's opinion unsupported by the objective record.

      **B.**    *The ALJ Did Not Err in Assigning Different Weights to Portions of Dr. Sheill's and Dr. Tareen's Opinions.*

In his decision, the ALJ noted that he gave "little weight" to a majority of Dr. Shiell's opinion, but that he gave "great weight" to the portion of the opinion stating Plaintiff was intolerant of various environmental factors due to her asthma.  (PageID.103.)  Conversely, the ALJ gave "great weight" to a majority of Dr. Tareen's opinion, but gave only "little weight" to the portion of the opinion finding Plaintiff would have moderate difficulties in completing a normal workweek.  (PageID.59, 103–104.)  Plaintiff claims that the ALJ could not parse out and give different weights to portions of the physicians' opinions, arguing that doing so would be in violation of the Sixth Circuit's holding in *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).  Plaintiff's reliance on this authority, however, is misplaced and unpersuasive.

14

In *Ealy*, Jimmy Ealy's application for disability benefits was denied by the Social Security Administration following a hearing before an ALJ. *Id.* at 506. The medical record before the ALJ contained the conclusion by Dr. Scher that Jimmy was limited to the performance of "simple repetitive tasks" in "[two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 516. The ALJ expressly adopted this limitation. *Id.* The ALJ also found that Jimmy "ha[d] moderate difficulties" with regard to concentration, persistence, or pace. *Id.* at 510. Despite expressly adopting the limitation articulated by Dr. Scher, the hypothetical question which the ALJ posed to the vocational expert stated, in relevant part, "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* at 516.

The Sixth Circuit found that the ALJ's reliance on the response to this particular question was improper because the ALJ, having expressly adopted the limitation articulated by Dr. Scher, "should have included [in his hypothetical question] the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job." *Id.* As the Sixth Circuit concluded, because "Ealy's limitations were not fully conveyed to the vocational expert," the ALJ's reliance on the vocational expert's testimony could not constitute substantial evidence. *Id.* at 516–17.

Contrary to Plaintiff's argument, the ALJ was not required, under *Ealy*, to evaluate the opinions at issue and then either adopt or reject them in whole. Rather, *Ealy* simply reiterates the long-held notion that if the ALJ relies on the response to a hypothetical question, such question must accurately portray the claimant's limitations and be consistent with the ALJ's express findings. *See, e.g.*, *Clayton v. Astrue*, No. 1:12-CV-79, 2013 WL 427407, at *7 (S.D. Ohio Feb. 1, 2013), *report and recommendation adopted sub nom*, 2013 WL 949833 (S.D. Ohio Mar. 12, 2013).

In *Ealy*, the ALJ expressly adopted a specific limitation which he then failed to include in his hypothetical to the vocational expert. Here, no such shortcoming or inconsistency exists. The ALJ thoroughly explained his reasoning, adopted those limitations he found were supported by the record, and then posed a hypothetical to the VE that accurately reflected those limitations he adopted. This argument is, therefore, rejected.

      C.    *Substantial Evidence Supports the Limitations Provided by the ALJ.*

Finally, Plaintiff claims the ALJ erred in crafting his own RFC. (PageID.1463.) Specifically, Plaintiff claims the ALJ had no basis for several limitations, including: (1) that Plaintiff can perform work at the light exertional level; (2) that Plaintiff can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; (3) that Plaintiff must occasionally avoid exposure to environmental irritants; (4) that Plaintiff had mild restrictions in social functioning; and (5) that Plaintiff had moderate restrictions in maintaining concentration, persistence or pace.[2] (PageID.1463.)

RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). "The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (stating that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity."). Plaintiff is apparently under the belief that none of the limitations found by the ALJ are supported by the record. She is mistaken.

---

[2]In this, and the prior limitation, Plaintiff appears to confuse the ALJ's paragraph B findings with the RFC determination.

Regarding the ALJ's determination that Plaintiff was capable of a range of light work, the ALJ gave great weight to the opinion of Dr. Shahida Mohiuddin, an agency consultant. (PageID.101–102.)  Dr. Mohiuddin opined that Plaintiff could occasionally lift and carry up to twenty pounds and frequently lift and carry ten pounds.  She could stand and walk for about six hours in an eight-hour workday.  (PageID.55.)  These are limitations consistent with light work. Dr. Mohiuddin also opined that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (PageID.55.)  Accordingly, Plaintiff's argument is that "[n]o medical evidence is cited by the ALJ to limit the frequency to occasionally" (PageID.1463) is baseless.  The ALJ also provided an extensive discussion of Plaintiff's trouble breathing at night, as well as shortness of breath due to her asthma and sinusitis.  (PageID.102.)  He also gave great weight, as discussed above, to the portion of Dr. Sheill's opinion reflecting limitations due to environmental irritants.  Accordingly substantial weight supports the ALJ's conclusion that Plaintiff must occasionally avoid exposure to these hazards.  Plaintiff has not demonstrated that she is further limited.  Finally, the ALJ expressly adopted Dr. Tareen's opinion that Plaintiff had mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.  (PageID.103.)  Therefore the ALJ's conclusion was not, as Plaintiff argues "his alone." (PageID.1463.)  This argument is rejected.

For all the above reasons, this claim of error is denied.

### 4.    The ALJ's Credibility Determination is Supported by Substantial Evidence.

At the administrative hearing, Plaintiff testified that she was impaired to a greater extent than that found by the ALJ.  Among other things, Plaintiff complained that she had constant pain in her lower back.  (PageID.1434.)  She stated that due to this pain, she could not walk around

a store when grocery shopping, and that she would have to lean on the cart to get something like a box of cereal.  (PageID.1419–1420.)  She testified she could sit for roughly ten minutes, and that she could hardly stand at all.  (PageID.1433.)  She stated her depression caused her to get tired, and that she would stay in her pajamas for days.  (PageID.1428.)   She further had problems concentrating, and could not read books, though she was able to watch TV depending on her pain.  (PageID.1436–1437.)   The ALJ found Plaintiff's allegations were "not fully credible."  (PageID.100.)  Plaintiff claims the ALJ erred in doing so.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability."  *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009).  Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard.  *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship*

18

*v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence

fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and

discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative

record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be

accorded great weight and deference."  *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v.*

*Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d

1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders,

to pass upon the credibility of the witnesses and weigh and evaluate their testimony").  It is not for

this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported

by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be

fully credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health &*

*Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).  In fact, as the Sixth Circuit has stated, "[w]e have

held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie*

*v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ noted that the record did not support Plaintiff's complaints.  Regarding her

allegation that her back pain limited her ability to sit, stand and walk, the ALJ found such to be

inconsistent with a June 12, 2013, treatment note from Dr. Paul Lomeo which found that Plaintiff

was in "[n]o apparent acute or chronic distress."  (PageID.100, 277.)  The ALJ also noted an

October 17, 2013, visit with Dr. David Krencik, D.O., at Michigan Pain Consultants.  There,

Plaintiff stated that her pain fell at an eight on a scale of zero to ten.  (PageID.541.)  Despite this

pain, Dr. Krencik found her to be pleasant.  During the examination she was joking and laughing.

(PageID.542.)   Plaintiff argues that "periodic stability is not equivalent to no disability." (PageID.1464.)  But that is not what the ALJ found.  Rather he noted that the record did not support the severity of Plaintiff's complaints.  Moreover, Plaintiff points to no other records demonstrating she was further impaired.

The ALJ also noted, from Dr. Krencik's treatment note, that someone in "as much distress as the claimant alleged due to pain would be expected to exhibit consistent pain behavior ans give consistent pain level accounts."  (PageID.100.)  Plaintiff objects to this statement, arguing that "no doctor questioned the claimant's veracity."  (PageID.1465.)  As noted above, however, Dr. Krencik  found Plaintiff "was pleasant, joking and laughing up until the time at the visit when she asked what pain medication she was going to be prescribed.  When she was told we were [not] going to prescribe any narcotics today she became upset and crying."  (PageID.542.)  The ALJ reasonably concluded that someone in as much pain as Plaintiff alleged would not have inconsistent reports such as the above.

Next, Plaintiff disagrees with the ALJ's conclusion that her testimony regarding her ability to stand and walk was inconsistent with treatment notes documenting a normal gait and finding that she did not need an assistive device.  (PageID.100.)  She argues that she testified she was unable to walk for more than twenty minutes, and there is no evidence she was walking for twenty minutes or standing for an extended period of time during the examinations referenced by the ALJ.  (PageID.1465.)  As an initial matter, the ALJ's decision describes Plaintiff's testimony as claiming she was less limited than she actually stated.  For example, she testified she could "only stand for a couple of minutes at most" (PageID.1433.)  She could only walk for a quarter of a block, or distances between that of a handicapped parking space to a store front.  (PageID.1434.)  From

20

there, she stated she could walk for twenty minutes *while* leaning on a cart not, as the ALJ seemed to state, before needing to lean on something.  (PageID.100, 1434.)  With this in mind, Plaintiff's testimony is certainly inconsistent with the records referenced by the ALJ.  But even if the ALJ erred, the ALJ provided numerous other reasons, supported by substantial evidence, for discounting Plaintiff's credibility.  Accordingly any error would be harmless.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting  *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) ("[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal").

Plaintiff's next argument– stating that it was improper for the ALJ to reference her failure to stop smoking–is not well taken.  Plaintiff was instructed on several occasions that her decision to continue smoking would only worsen her impairments and symptoms. Plaintiff's subsequent refusal to stop smoking is a legitimate factor to consider in evaluating her credibility. *See, e.g.*, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Marshall v. Comm'r of Soc. Sec.*, No. 13-CV-14255, 2015 WL 777940 at *5 (E.D. Mich. Feb. 24, 2015) ("under Sixth Circuit precedent, the ALJ was permitted to consider Plaintiff's continued smoking habit in evaluating his credibility").

Finally, the ALJ noted that Plaintiff's testimony was inconsistent with her function report, noting that Plaintiff had previously stated she was "good" at reading and she would "read almost anything" daily.  (PageID.101, 220.)   Plaintiff argues that instead of finding this inconsistency to negatively reflect upon her credibility, "the most obvious explanation is that her condition worsened over fourteen months."  (PageID.1466.)  But the function report is dated well after Plaintiff's alleged onset date, and Plaintiff cites to no records demonstrating that her condition

21

worsened between August 31, 2013 (the date she completed the function report) and November 7, 2014 (the date of the administrative hearing.)  In any event, as noted above, the ALJ provided numerous other reasons for discounting Plaintiff's credibility.  She cannot demonstrate reversible error here.

For all the above reasons, this claim of error is rejected.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated: <u>November 17, 2016</u>                    <u>/s/ Robert Holmes Bell</u>
                                                 ROBERT HOLMES BELL
                                                 UNITED STATES DISTRICT JUDGE